# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### MINNEAPOLIS DIVISION

COLEEN ROWLEY,
WILLIAM "BILL" SOREM,
FIONA ROEDL, DARLENE
COFFMAN,
JANICE WARD, DAVID
EVENHOUSE, AMY
BLUMENSHINE, MIKE
MADDEN, CAROL WALKER,
JOHN VARONE, AHMED
THARWAT and JOHN DOE
(on behalf of themselves and all
others similarly situated)

**RECEIVED**

MAY 1 2 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Plaintiffs Pro
Se

vs.

BRAD FINSTAD, ANGIE
CRAIG, DEAN PHILLIPS,
BETTY MCCOLLUM, TOM
EMMER, MICHELLE
FISCHBACH, PETE
STAUBER, AMY
KLOBUCHAR, TINA SMITH,
LLOYD J. AUSTIN III and
PETE HEGSETH;

Case No. 25-cv-2059-DWF/DTS
(To be assigned by Clerk of District
Court)

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Defendants

SCANNED

MAY 1 2 2025

U.S. DISTRICT COURT MPLS

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### PARTIES

1.  Plaintiffs

    a.  Plaintiff No. 1

    Name                Coleen Rowley

    Street Address      193 Beaumont Ct

    City, County        Apple Valley, Dakota Co.

    State & Zip Code    Minnesota  55124

    Telephone Number    952 393-0914

    b.  Plaintiff No. 2

    Name                William "Bill" Sorem

    Street Address      14301 Stewart Lane, #405

    City, County        Minnetonka, Hennepin Co.

    State & Zip Code    Minnesota  55345-5833

    Telephone Number    952 239-1169

    c.  Plaintiff No. 3

    Name                Fiona Roedl

    Street Address      4520 33rd Ave. So.

    County, City        Minneapolis, Hennepin Co.

    State & Zip Code    Minnesota  55406

    Telephone Number    612 242-1999

d.  Plaintiff No. 4

    Name                      Darlene Coffman

    Street Address        1019 Chalet Dr. NW

    City, County          Rochester, Olmsted Co.

    State & Zip Code     Minnesota   55901

    Telephone Number   507 513-1730

e.  Plaintiffs No. 5 and 6

    Name                      Janice Ward and David Evenhouse

    Street Address        48063 Big Island Rd.

    City, County          Marcell, Itasca Co.

    State & Zip Code     Minnesota  56657

    Telephone Number   218 832-3946

f.  Plaintiff No. 7

    Name                      Ahmed Tharwat

    Street Address        15421 Lake St. Ext.

    City, County          Minnetonka, Hennepin Co.

    State and Zip Code   Minnesota  55345

    Telephone Number   612 250-6567

g.  Plaintiff No. 8

    Name                      John Varone

    Street Address        661 Bighorn Dr

    City, County          Chanhassen, Carver Co.

    State and Zip Code   Minnesota  55317

Telephone Number    952 200-0224

h.   Plaintiff No. 9

Name                      Michael John Madden

Street Address           1768 Iglehart Avenue

City, County             St. Paul, Ramsey

State & Zip Code         Minnesota   55104

Telephone Number    651 644-2288

i.   Plaintiff No. 10

Name                      Carol Walker

Street Address           1311 Earl Street

City, County             St. Paul, Ramsey Co.

Telephone Number    651 774-5795

j.   Plaintiff No. 11

Name                      John Doe

County                    Stearns Co.

State & Zip Code         Minnesota,  56352

2.   Defendants

a.   Defendant No. 1

Name                      Brad Finstad

Street Address           2746 Superior Drive NW, Suite 100

City, County             Rochester, Olmsted

State & Zip Code         Minnesota  55901

4

b. Defendant No. 2

    Name                Angie Craig

    Street Address      1915 Plaza Dr., Suite 202

    City, County       Eagan, Dakota

    State & Zip Code    Minnesota 55122

c. Defendant No. 3

    Name                Dean Phillips

    Street Address      13911 Ridgedale Drive, Suite 200

    City, County       Minnetonka, Hennepin

    State & Zip Code    Minnesota 55305

d. Defendant No. 4

    Name                Betty McColllum

    Street Address      661 LaSalle St., Suite 110

    City, County       St. Paul, Ramsey

    State & Zip Code    Minnesota 55114

e. Defendant No. 5

    Name                Tom Emmer

    Street Address      1107 Hazeltine Blvd, Suite 476

    City, County       Chaska, Carver

    State & Zip Code    Minnesota 55318

f. Defendant No. 6

    Name                Michelle Fischbach

    Street Address      2513 8th St. S.

City, County          Moorhead, Clay Co.

State & Zip Code      Minnesota 56560

g. Defendant No. 7

   Name               Pete Stauber

   Street Address     Brainerd City Hall, 501 Laurel St.

   City, County       Brainerd, Crow Wing Co.

   State & Zip Code   Minnesota 56401

h. Defendant No. 8

   Name               Amy Klobuchar

   Street Address     1200 Washington Ave. So., Suite 250

   City, County       Minneapolis, Hennepin

   State & Zip Code   Minnesota 55415

i. Defendant No. 9

   Name               Tina Smith

   Street Address     60 Plato Blvd., East Suite 221

   City, County       St. Paul, Ramsey

   State & Zip Code   Minnesota 55107

j. Defendant No. 10

   Name               Lloyd Austin III

   Street Address     (former) Secretary of Defense, 1000 Defense, Pentagon

   City, County

   State & Zip Code   Washington, DC 20301-1000

k. Defendant No. 11

Name            Pete Hegseth

Street Address   Secretary of Defense, 1000 Defense, Pentagon

City, County

State & Zip Code   Washington, DC  20301-1000

1.

## JURISDICTION

3. What is the basis for federal court jurisdiction? *(check all that apply)*

   x  Federal Question

4. If the basis for jurisdiction is Federal Question, which Federal Constitutional, statutory or treaty right is at issue?  List all that apply.

   Constitutional Rights; federal laws and treaties; a Declaratory Judgment Action (28 U.S.C.

   Sections 1331, 2201, 2202)

5. What is the basis for venue in the District of Minnesota?  (*check all that apply*)

   X  All Defendants (except for Lloyd Austin III and Pete Hegseth) and all Plaintiffs reside in Minnesota

## STATEMENT OF THE CLAIM

6.    Plaintiffs allege the following class action claims as Representative Plaintiffs

      and on behalf of all other persons similarly situated (hereinafter "CLASS

      MEMBERS") who are taxpayer residents in the U.S. Congressional Districts

for which Defendants BRAD FINSTAD, ANGIE CRAIG, DEAN PHILLIPS,

BETTY MCCOLLUM, TOM EMMER, MICHELLE FISCHBACH, and PETE

STAUBER serve or served as members of Congress and for which Defendants

AMY KLOBUCHAR and TINA SMITH serve or served as their U.S. Senators.

Plaintiffs allege that Defendants BRAD FINSTAD, ANGIE CRAIG, DEAN

PHILLIPS, BETTY MCCOLLUM, TOM EMMER, MICHELLE

FISCHBACH, PETE STAUBER, AMY KLOBUCHAR and TINA SMITH

("Congressional Defendants" or "Defendant Congresspersons") and LLOYD J.

AUSTIN III and PETE HEGSETH (as former and current Defense Secretaries)

exceeded the constitutional and other statutory limitations on their tax and

spend authority by voting in April 2024 to authorize the funding of the Israeli

military when they were aware, or should have been aware, that the Israeli

military was committing genocide in Gaza, which made their votes a violation

of customary international and federal law that prohibits complicity in

genocide.  Furthermore, Defendants' votes violated multiple other laws and

policies, including the Leahy Law, which prohibits aid to foreign security forces

that have committed a gross violation of human rights;  the Foreign Assistance

Act of 1961 and Arms Export Control Act, which prohibit assistance to any

country in which the government engages in a consistent pattern of gross

violations of internationally recognized human rights and require the

advancement of U.S. foreign policy interests consistent with internationally-recognized human rights; and the Conventional Arms Transfer policy, which prohibits U.S. weapons transfers that risk facilitating or otherwise contributing to violations of human rights or international law. Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes have been and continue to be violated by Defendants' votes to use Plaintiffs' taxes for unlawful, unconstitutional purposes of being complicit in genocide. Furthermore, the acts of the Defendant Congresspersons resulted in the passage of the Israel Security Supplemental Appropriations Act, which appropriated $26.38 billion in U.S. taxpayer dollars to the U.S. Department of Defense to be used as military aid to Israel. Defendants LLOYD J. AUSTIN III, in his role as former Secretary of Defense of the U.S. Department of Defense and PETE HEGSETH  as current Secretary of Defense of the U.S. Department of Defense are ultimately responsible for the military aid sent to Israel pursuant to the Act. This Act has and continues to violate the same constitutional rights of Plaintiffs to have their taxes collected for only lawful purposes and not for the unlawful purpose of being complicit in genocide. Accordingly the Act is unconstitutional and should be declared as such and enjoined from enforcement.

## JURISDICTION AND VENUE

7.   This action is brought pursuant to the United States Constitution. It is authorized by Article III, Section 2, which extends the federal judicial power to all cases arising in equity under the Constitution. An actual case and controversy exists between the parties because while Plaintiffs allege that Defendants' votes to authorize the funding of the Israeli military was unconstitutional and violated their constitutional rights to have their taxes collected for only lawful purposes, Defendants deny that their votes were unconstitutional. This controversy threatens Plaintiffs' constitutional rights and emotional or psychic health. Plaintiffs have no adequate remedy at law to redress the harms herein, which are of a continuing nature.

8.   This Court has jurisdiction pursuant to 28 U.S.C. section 1331 as this action arises under the laws of the United States. This Court can grant declaratory relief in the first instance and later consider further necessary or proper relief, if warranted, pursuant to the Declaratory Judgment Act (28 U.S.C. Sections 2201, et seq.) Only the Court has the authority to declare Defendants' conduct unconstitutional.

9.   A substantial part of the events or omissions giving rise to the claims occurred in the judicial district of the United States District Court, District of Minnesota.

## PARTIES

10. Plaintiff COLEEN ROWLEY is a federal taxpayer and resident of Dakota County. Defendant ANGIE CRAIG is ROWLEY'S Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are her U.S. Senators for Minnesota.

11. Plaintiff FIONA ROEDEL is a federal taxpayer and resident of Hennepin County. Defendants AMY KLOBUCHAR and TINA SMITH are ROEDEL's U.S. Senators for Minnesota.

12. Plaintiff DARLENE COFFMAN is a federal taxpayer and resident of Olmsted County. Defendant BRAD FINSTAD is COFFMAN's U.S. Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are her U.S. Senators for Minnesota.

13. Plaintiffs JANICE WARD and DAVID EVENHOUSE are a married couple federal taxpayers and residents of Itasca County. Defendant PETE STAUBER is WARD's and EVENHOUSE's U.S. Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are their U.S. Senators for Minnesota.

14. Plaintiff AMY BLUMENSHINE is a federal taxpayer and resident of Hennepin County. Defendants AMY KLOBUCHAR and TINA SMITH are her U.S. Senators for Minnesota.

15. Plaintiff MIKE MADDEN is a federal taxpayer and resident of Ramsey County. Defendant BETTY MCCOLLUM is MADDEN's U.S. Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are his U.S. Senators for Minnesota.

16. Plaintiff CAROL WALKER is a federal taxpayer and resident of Ramsey County. Defendant BETTY MCCOLLUM is WALKER's U.S. Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are her U.S. Senators for Minnesota.

17. Plaintiff JOHN VARONE is a federal taxpayer and resident of Carver County. Defendant TOM EMMER is VARONE's U.S. Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are his U.S. Senators for Minnesota.

18. Plaintiff JOHN DOE (who has not consented to his name being made public) is a federal taxpayer and resident of Stearns County. Defendant MICHELLE FISCHBACH is DOE's U.S. Congressional Representative and Defendants AMY KLOBUCHAR and TINA SMITH are his U.S. Senators for Minnesota.

19. Plaintiff BILL SOREM is a federal taxpayer and resident of Hennepin County. Defendant DEAN PHILLIPS was SOREM's U.S. Congressional Representative during the relevant period of time in April 2024 and Defendants AMY KLOBUCHAR and TINA SMITH are his U.S. Senators for Minnesota.

12

20.   Plaintiff AHMED THARWAT is a federal taxpayer and resident of Hennepin

County. Defendant DEAN PHILLIPS was THARWAT's U.S. Congressional

Representative during the relevant period of time in April, 2024 and Defendants

AMY KLOBUCHAR and TINA SMITH are his U.S. Senators for Minnesota.

21.   Defendant LLOYD J. AUSTIN III was the Secretary of Defense of the U.S.

Department of Defense during the time period relevant to this action (April

2024). In this capacity, he oversaw the Defense Department and acted as the

principal defense policy maker and advisor during the relevant period.

22.   Defendant PETE HEGSETH is the current Secretary of Defense of the U.S.

Department of Defense and has been since January 25, 2025. In this capacity,

he oversees the Defense Department and acts as the principal defense policy

maker and advisor involved in the continued funding of Israel's ongoing

genocide.

## FACTUAL BACKGROUND

23.   Plaintiff CLASS REPRESENTATIVES were federal taxpayers during the

year 2024.

24.   CLASS REPRESENTATIVES bring this action individually and as a class

action on behalf of all persons similarly situated and harmed by Defendants'

conduct, including, but not limited to, the following Class: **All persons who**

**were federal taxpayers and who resided in Minnesota during the year 2024 including those who reside within the federal 1st, 2nd, 3rd, 4th, 6th, 7th and 8th Congressional Districts of Minnesota and have suffered moral and emotional/psychic injury from being made complicit in the ongoing genocide in Gaza.**

25. On January 26, 2024, the International Court of Justice ("ICJ") ruled that the charge made by the South African government—genocide by the Israeli government in Gaza---should not be dismissed and that the case should proceed for ongoing litigation. The ICJ found that at least some of the acts and omissions committed by Israel in Gaza appear to be capable of falling withing the provisions of the United Nations Convention on the Prevention and Punishment of the Crime of Genocide ("Convention"). The ICJ made a preliminary ruling ordering that Israel ensure with immediate effect that its military does not commit genocide, take immediate and effective measures to enable the provision of urgently needed basic services and humanitarian assistance to address the adverse conditions of life faced by Palestinians in the Gaza Strip, and take all measures within its power to prevent and punish the direct and public incitement to commit genocide in relation to members of the Palestinian group in the Gaza Strip.

26. On January 31, 2024, the ICJ found that it is plausible that Israel's conduct in
Gaza amounts to genocide. *See Defense for Children International-Palestine v.
Biden* (N.D. Cal. 2024) 714 F. Supp.3d 1160, 1167, aff'd (9th Cir. 2024) 107
F.4[th] 926.

27. On February 26, 2024, Amnesty International issued a finding that the Israeli
government was defying the January 26, 2024 ICJ ruling. Human Rights
Watch made the same finding on the same day. Both human rights
organizations found that the Israeli government was systematically starving the
people of Gaza through cutting off aid, water, and electricity, by bombing and
military occupation, all underwritten by the provision of U.S. military aid and
weapons.

28. On March 24, 2024, Francesca Albanese, the UN Special Rapporteur on the
situation of human rights in the Palestinian territories, issued a comprehensive
report that found the Israeli government had unequivocally crossed the
"threshold" and was actively committing genocide in Gaza.

29. On April 20, 2024, each of the U.S. Congressional Representative Defendants
voted in favor of the Israel Security Supplemental Appropriations Act. On
April 23, 2024, each of the U.S. Senator Defendants voted in favor of the Act.
This Act (Public Law No: 118-50) allocated $26.38 billion in U.S. taxpayer
dollars to the Department of Defense for use as military aid to Israel, including,

but not limited to, $3.5 billion for the procurement of advanced weapons systems, defense articles, and defense services through the Foreign Military Financing Program; $1 billion to enhance the production and development of artillery and critical munitions; and $4.4 billion to replenish defense articles and defense services provided to Israel.

30. Defendant Congresspersons were aware, or should have been aware, of the rulings and finding described in Paragraphs 25 through 28 that Israel was actively engaged in committing genocide before voting in favor of the Israel Security Supplemental Appropriations Act. Prior to their vote, Defendants were made further aware of Israel committing genocide by their constituents who communicated and/or attempted to communicate with them (by letter, phone, and/or in person) to urge each of them to not vote in favor of the Israel Security Supplemental Appropriations Act.

31. The crime of genocide is arguably the most serious, heinous crime in the history of human existence. In his Opening Statement at Nuremberg, November 21, 1945, American Prosecutor (and Supreme Court Justice) Robert H. Jackson, described the Nazi genocide as "The wrongs which we seek to condemn and punish have been so calculated, so malignant, and so devastating, that civilization cannot tolerate their being ignored, because it cannot survive their being repeated."

32.   The U.S. government implemented the Genocide Convention in 1987 by

passing the Genocide Convention Implementation Act. The U.S. government

ratified the Convention in 1988. Although the ratification included several

reservations, there was no ratifying reservation with respect to Article III of the

Convention, which establishes that "complicity in genocide" is a crime. The

crime of complicity is found at 18 U.S.C. section 1091. Determination of the

egregious crimes of genocide and complicity in genocide constitute questions of

law for the Judicial Branch and cannot be dismissed as mere political decisions

by either the Executive or Legislative Branches of government.

33.   The U.S. Congress approved what is known as the Leahy Law (*see* 10 U.S.C.

Section 362; 22 U.S.C. Section 2378d) in 1997. This law's purpose is to

prevent the U.S. from being implicated in serious crimes committed by foreign

security forces that it supports by cutting off aid to a specific unit if the U.S. has

credible information that the unit committed a gross violation of human rights.

The law requires the U.S. government to vet foreign security forces and to

terminate U.S. aid to those that fail to remediate human rights abuses.

34.   The vetting process required by the Leahy Law with respect to military aid to

Israel has not occurred, as found by human rights organization DAWN in an

April 30, 2024 report.

35.  Senator Patrick Leahy, who is the namesake for the Leahy Law, stated on May 23, 2024, that "Since the Leahy law was passed, not a single Israeli security force unit has been deemed ineligible for U.S. aid, despite repeated, credible reports of gross violations of human rights and a pattern of failing to appropriately punish Israeli soldiers and police who violate the rights of Palestinians."

36.  Defendant Congresspersons and Senators' April 2024 votes also violated the Foreign Assistance Act of 1961 (22 U.S.C. Section 2151 *et seq.*) and Arms Export Control Act (22 U.S.C. Section 2271 *et seq.*) which prohibit assistance to any country in which the government engages in a consistent pattern of gross violations of internationally recognized human rights, and require the advancement of U.S. foreign policy interests consistent with internationally-recognized human rights. The votes to allocate U.S. taxpayer dollars as military aid to Israel included arms sales that are directly tied to tens of thousands of civilian deaths in Gaza.

37.  Defendant Congresspersons and Senators' April 2024 votes further violated the Conventional Arms Transfer policy which prohibits U.S. weapons transfers that risk facilitating or otherwise contributing to violations of human rights or international law.

38. Defendant Congresspersons' and Senators' April 2024 votes further violated customary international law and Article 6 of the U.S. Constitution, which makes laws and treaties the supreme law of the land.

39. The Israel Security Supplemental Appropriations Act itself violates customary international law and the Convention on the Prevention and Punishment of Genocide, to which the United States has bound itself, by appropriating tax dollars for complicity in genocide. The Israel Security Supplemental Appropriations Act also violates the Genocide Convention Implementation Act in the same manner.

40. Starting shortly after the April 20 and 23, 2024 votes, published reports provided further indication that the votes were illegal. On May 29, 2024, the Research Society of International Law published a report, America's Complicity in the Crime of Genocide in Gaza, which found that the U.S. government had violated Article III of the Convention with respect to funding Israel's military activities in Gaza.

41. On December 5, 2024, Amnesty International concluded after extensive investigation that Israel is committing genocide against Palestinians in Gaza (https://www.amnesty.org/en/latest/news/2024/12/amnesty-international-concludes-israel-is-committing-genocide-against-palestinians-in-gaza/).

42.   CLASS REPRESENTATIVES and CLASS MEMBERS have standing to

bring this class action under *Flast v. Cohen* (1968) 392 U.S. 83.  In *Flast*, the

U.S Supreme Court affirmed the right of taxpayers to file a class action lawsuit

when their tax dollars were used by government officials in an unconstitutional

manner. Per the *Flast* ruling, just as government officials cannot allocate our

tax dollars into private religious schooling, thereby breaching the Establishment

Clause, they likewise cannot allocate our tax dollars into funding genocide

which allocation violates Article I, Section 8 that gives Congress the

responsibility to conduct its tax and spend authority according to the "general

welfare" and the "common defense."  With this class action, CLASS

REPRESENTATIVES and CLASS MEMBERS challenge Defendants' votes

on April 20 and April 23, 2024 in favor of the Israel Security Supplemental

Appropriations Act, which was an exercise of tax and spend power by

Defendants that extracted the tax money of CLASS REPRESENTATIVES and

CLASS MEMBERS.  Furthermore, CLASS REPRESENTATIVES and CLASS

MEMBERS allege that Defendants' votes and extractions of their tax money

exceeded the constitutional limits on tax and spend power by allocating

taxpayer funds for an illegal purpose, namely in violation of the prohibition of

complicity in genocide (18 U.S.C. Section 1091), the Leahy Law, the Foreign

Assistance Act of 1961 and Arms Export Control Act, and the Conventional

20

Arms Transfer policy, rather than for the general welfare. Moreover, CLASS REPRESENTATIVES and CLASS MEMBERS seek a declaration that the Israel Security Supplemental Appropriations Act is unconstitutional.

43.   While the U.S. Supreme Court recognized in *United States v. Butler*, 297 U.S. 1 (1936) that the power of Congress to authorize the expenditure of tax dollars is broad, it nonetheless must conform to the "general welfare" or "common defense." This spending power is of course not unlimited, *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, (1981), but is instead subject to several general restrictions, the first of which is derived from the language of the Constitution itself: the exercise of the spending power must be in pursuit of "the general welfare." (See *Helvering v. Davis*, 301 U.S. 619, 640-641, (1937); *United States v. Butler, supra*, at 65.) No amount of deference to Congress for their allocation of a large percentage of our tax dollars to fund the genocide in Gaza should be found to conform to "general welfare" or "common defense."

44.   This fiscal allocation also violates Article VI of the U.S. Constitution that establishes treaties ratified by the U.S. Government as the "supreme law of the land." In 1988, the U.S. government ratified the Convention for the Prevention and Punishment of the Crime of Genocide. (*See* https://ihl-databases.icrc.org/en/national-practice-us-code-title-18-chapter-50a-1988).

Though it did so with some exemptions, it did not exempt itself from Article III

of the Convention, prohibiting "complicity in genocide." This was re-affirmed

by the 2007 Genocide Accountability Act (Public Law 110-151) which made

both citizens and non-citizens liable for acts of genocide whether inside or

outside borders of the United States. (*See*

https://www.govinfo.gov/app/details/PLAW-110publ151). In the words of

Representative Maxine Waters, "Genocide is a heinous and despicable crime,

which contradicts all of the values we in America hold dear. We must use

every tool at our disposal to stop genocide from occurring and to hold those

who commit genocide responsible for their actions." ("Genocide and the Rule

of Law" waters.house.gov, Aug 3, 2000, at https://waters.house.gov/media-

center/committee-remarks/genocide-and-rule-law). What has happened in Gaza

over the past 19 months is unequivocally genocide, as documented in

comprehensive reports by UN officials, international courts, Amnesty

International, Human Rights Watch and Doctors Without Borders, among many

other credible sources. Recently the largest and most prestigious professional

society for the teaching and study of American history (which publishes the

*Journal of American History*) also overwhelmingly passed a resolution

condemning Israel's "scholasticide" in Gaza.

45.   CLASS REPRESENTATIVES have suffered and continue to suffer concrete,

particularized, and actual or imminent injury as a result of DEFENDANTS'

conduct.  Each of the CLASS REPRESENTATIVES has experienced moral

injury and acute emotional injury caused by Defendants' votes to arm Israel and

in support of Israel's continuing genocide via the Israel Security Supplemental

Appropriations Act.  The Act itself has forced the CLASS

REPRESENTATIVES to be complicit in the genocide carried out by the State

of Israel in Gaza due to the tax dollars paid by CLASS REPRESENTATIVES

and CLASS MEMBERS and which are used to fund Israeli military activity in

Gaza.  The moral injury has manifested in emotional or psychic distress

experienced by all CLASS REPRESENTATIVES, including, but not limited to,

symptoms such as bouts of uncontrollable weeping, inability to sleep,

distractions from work, despair for the future of their children and humanity,

inability to experience joy, feelings of guilt, social isolation, and anxiety.  The

foregoing injury has been ongoing since April 20, 2024.

46.   This action has been brought and may be properly maintained as a class

action under Rule 23 of the Federal Rules of Civil Procedure because there is a

well-defined community of interest in the litigation, and the proposed Class is

easily ascertainable.

47. **Numerosity:** A class action is the only available method for the fair
adjudication of this controversy. The CLASS MEMBERS are so numerous that
joinder of all members is impractical, if not impossible, insofar as CLASS
REPRESENTATIVES are informed and believe and, on that basis, allege that
there are sufficient class members to meet the numerosity requirement.
Membership in the Class will be determined upon analysis of federal taxpayer
status and residency within the state of Minnesota, including within the 1st, 2nd,
3rd, 4th, 6th, 7th and 8th Congressional Districts of Minnesota.

48. **Commonality:** CLASS MEMBERS share a community of interest in that
there are numerous common questions and issues of fact and law which
predominate over any questions and issues solely affecting individual members,
including, but not limited to, whether Defendants exceeded the constitutional
limits on tax and spend authority when voting in favor of the Israel Security
Supplemental Appropriations Act and whether the Act itself is unconstitutional.

49. **Typicality:** CLASS REPRESENTATIVES' claims are typical of the claims
of the other class members. CLASS MEMBERS are individuals residing
within the Congressional Districts for which one of the CONGRESSIONAL
DEFENDANTS is the representative who have experienced moral injury
caused by Defendants' votes in favor of the Israel Security Supplemental
Appropriations Act and the Act itself, which forced the CLASS MEMBERS to

be complicit in the genocide carried out by the State of Israel in Gaza due to the tax dollars paid by CLASS MEMBERS being used to fund the aerial bombing, starvation program and other Israeli military activity in Gaza. CLASS MEMBERS' moral injuries have manifested in the same ongoing emotional or psychic distress as that experienced by CLASS REPRESENTATIVES.

50. **Superiority of Class Action:** Since the damages suffered by individual members of the Class, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make, or may make, it impractical for CLASS MEMBERS to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual class member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings that might be dispositive of the interests of other class members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

51. **Adequacy of Representation:** Class Representatives are adequate representatives of the CLASS MEMBERS. CLASS REPRESENTATIVES' claims are typical of those of the CLASS MEMBERS, and CLASS REPRESENTATIVES have the same interest in the litigation of this case as the

CLASS MEMBERS.  CLASS REPRESENTATIVES are committed to vigorous prosecution of this case despite their "pro se" status and their lack of legal resources due to their current inability to retain competent counsel licensed by state/federal judicial officials and the Minnesota Bar Association.

52.  As further explanation of Plaintiffs' current inability to retain licensed competent counsel, the Court may wish to take judicial notice of a certain chilling situation currently adversely affecting and effectively threatening members of the judicial branch and law profession in recent times due to elements of the Executive Branch seeking greater and greater power in line with earlier "imperial war presidency" theories, some actions of which have already been deemed illegal and to surpass constitutional limits.  The famous Roman statesman Cicero long ago observed that "In times of war, the law falls silent." Unfortunately, human history has all too often periodically documented that tendency!

53.  This unfortunate historical tendency also explains why prior Presidents have attempted in the past to invoke "martial law" based on claims of an "emergency" need to disavow our normal constitutional framework with its Bill of Rights and its built-in "checks and balances" whereby the Legislative and Judicial Branches are often able to "check" any Executive abuses.  For example towards the end of the Vietnam War, the Congressional Church and Pike

Committees were eventually able to investigate the FBI's "Cointelpro," the CIA's "Chaos" and the NSA's "Minaret" illegal spy programs, effectively restraining those unconstitutional actions of the President and his Executive Branch agencies that had previously been occurring.  Courts, including the Supreme Court, have even more frequently served as a check on Executive abuses of power.  After 9-11, however, a series of DOJ memos purporting to "legalize" an illegal torture program and make other illegal abuses possible was devised by certain Executive Branch lawyers who subscribed to the theory of an all-powerful Article 2 "Commander in Chief imperial presidency."

Unfortunately, this most recent wrongful abuse of Executive power has not yet been effectively "checked" (i.e. reined in) by either the Legislative or Judicial Branches of the U.S. government.  Perhaps the notion of the U.S. being at "perpetual war" since that time is partly responsible as former Department of Justice Office of Legal Counsel Attorney (main author of the infamous series of "torture memos") John Yoo argued that the national "emergency" would be ongoing.  But for whatever reason, the Executive Branch has grabbed for itself broader and broader powers sometimes resurrecting the use, via novel interpretations of hundred-year-old statutes (like the 1917 "Espionage Act" created during World War I and about which strong consensus had long since formed of its unconstitutionality if broadly applied to target and imprison

journalists). Various other doctrines, deferential to Executive power, including those of "State Secrecy" and "Political Question," have also been repeatedly employed pursuant to the notion of an all-powerful Commander in Chief during what is called "perpetual war" for many Courts to effectively abdicate their responsibility to adjudicate legal issues, thus allowing the Executive to violate normal constitutional and other laws, even without an official declaration of martial law!

54.  Although Plaintiffs will continue to attempt to retain qualified legal counsel despite the current chilling atmosphere (which commentators increasingly refer to as a Constitutional Crisis"), the summary contained above in paragraphs 52 and 53, which the Court may wish to take judicial notice of, is simply for the purpose of explaining what brings us to this challenge of retaining competent legal counsel, wherein many legislative and judicial authorities as well as the wider legal profession seem to have been effectively intimidated or otherwise acquiesced in the Executive's attempted "legalization" of genocide and complicity in genocide. The commission of and/or complicity in genocide cannot ever be viewed as a mere political decision even in times of war but present solid questions of law for Courts to address.

55.  While the Court may have concerns about engaging in foreign policy matters, it is well within the judiciary's purview to adjudicate cases involving

constitutional violations, even when they intersect with foreign policy. The

judiciary has a duty to ensure that all branches of government act within their

constitutional limits. The Declaratory Judgement Act, 28 U.S.C. Sections 2201,

et seq., empowers federal courts to declare the rights and legal relations of

interested parties, providing a remedy for ongoing constitutional violations. In

*Massachusetts v. Mellon*, 262 U.S. 447 (1923), the Court acknowledged that

declaratory relief is appropriate where a substantial controversy exists between

parties with adverse legal interests. Courts have historically intervened in

foreign policy matters when constitutional rights are implicated. In *Baker v.

Carr*, 369 U.S. 186 (1962), the Supreme Court held that courts have the

authority to adjudicate constitutional claims even when they intersect with

foreign policy, provided the issues are justiciable and do not present a political

question. The political question doctrine is not applicable here because the case

involves judicially manageable standards and does not require the Court to

make policy determinations. Plaintiffs' claims are grounded in constitutional

violations, specifically the misuse of taxpayer funds for unlawful purposes,

which are within the purview of judicial review. Plaintiffs' claims do not seek

to dictate foreign policy but rather to ensure that congressional actions adhere to

constitutional and statutory limitations, including the prohibition against

complicity in genocide under 18 U.S.C. Section 1091. Moreover, the fact that

international law is implicated does not convert this matter into litigation over foreign policy.

56.   **Class Period** is designated as the period beginning on April 20, 2024, based on the allegations giving rise to the causes of action that occurred on that date and which have caused harm from that date to the present and will continue to cause harm in the future.

57.   If this Court should issue a declaratory judgment to resolve this actual constitutional case and controversy between the parties as to whether Congressional Defendants' April 20 and 23 votes in favor of the Israel Security Supplemental Appropriations Act and/or the Act itself violated and continues to violate CLASS MEMBERS' constitutional rights as described herein, the Court will have ordered a change in legal status that would have practical consequences.  A declaratory judgement would significantly increase the likelihood that CLASS MEMBERS would obtain relief to have their constitutional right to have their taxes collected for lawful purposes and not, in any case, for the most egregiously unlawful crime of complicity in genocide. The ongoing injuries suffered by CLASS MEMBERS caused by Defendants will end, providing substantially meaningful redress of their injuries.

Wherefore, Plaintiffs pray for relief as set forth below.

## FIRST CAUSE OF ACTION

Violation of Ninth Amendment and Article I, Section 8 of the Constitution
(Against All U.S. Congressional Defendants)

58.    Plaintiffs, on behalf of themselves individually and the proposed Class,
reallege and incorporate by reference the allegations contained in prior
paragraphs of this Complaint as if fully set forth herein.

59.    Protecting the human rights of individuals within the United States and
abroad is deeply rooted in this nation's history and tradition.

60.    The Ninth Amendment to the U.S. Constitution provides that the
enumeration in the Constitution of certain rights shall not be construed to deny
or disparage others retained by the people.

61.    Article I, Section 8 of the U.S. Constitution establishes Congress' power to
lay and collect taxes but only for the common defense and general welfare of
the United States.  When taxes are collected and allocated for unlawful
purposes, particularly highly or gravely illegal purposes, the general welfare is
not served.

62.    Pursuant to the Ninth Amendment and Article I, Section 8 of the U.S.
Constitution, there is an implied right to not have one's taxes be collected for
unlawful purposes, at a minimum not for highly gravely illegal purposes.
Plaintiffs hold these inherent, inalienable, natural, and fundamental rights.

63.    The acts of Defendants have unconstitutionally caused, and continue to

cause, a violation of Plaintiffs' constitutional rights to have their taxes collected

for only lawful purposes because said taxes have been and continue to be used

for the highly and gravely unlawful purpose of complicity in genocide.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set

forth below.

## SECOND CAUSE OF ACTION
*Bivens* action
(Against All U.S. Congressional Defendants)

64.    Plaintiffs, on behalf of themselves individually and the proposed Class,

reallege and incorporate by reference the allegations contained in prior

paragraphs of this Complaint as if fully set forth herein.

65.    Protecting the human rights of individuals within the United States and

abroad is deeply rooted in this nation's history and tradition.

66.    Article I, Section 8 of the U.S. Constitution establishes Congress' power to

lay and collect taxes but only for the common defense and general welfare of

the United States.  When taxes are collected and allocated for unlawful

purposes, the general welfare is not served.

67.    There is an implied right to not have one's taxes be collected for unlawful

purposes, at a minimum not for highly gravely illegal purposes.  Plaintiffs hold

these inherent, inalienable, natural, and fundamental rights.

68.    Defendants acted under color of federal authority when they voted in favor to allocate Plaintiffs' taxpayers dollars as military aid to Israel.

69.    The acts of Defendants have unconstitutionally caused, and continue to cause, a violation of Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes because said taxes have been and continue to be used for the highly and gravely unlawful purpose of complicity in genocide.

70.    The violation of Plaintiffs' constitutional rights has caused substantial damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set forth below.

### THIRD CAUSE OF ACTION
Unconstitutional Law in Violation of Ninth Amendment and Article I, Section 8
and Article 6 of the Constitution
(Against Defendant Austin and any successor Secretary of the Department of
Defense)

71.    Plaintiffs, on behalf of themselves individually and the proposed Class, reallege and incorporate by reference the allegations contained in prior paragraphs of this Complaint as if fully set forth herein.

72.    Protecting the human rights of individuals within the United States and abroad is deeply rooted in this nation's history and tradition.

73.   The Ninth Amendment to the U.S. Constitution provides that the
      enumeration in the Constitution of certain rights shall not be construed to deny
      or disparage others retained by the people.

74.   Article I, Section 8 of the U.S. Constitution establishes Congress' power to
      lay and collect taxes but only for the common defense and general welfare of
      the United States. When taxes are collected and allocated for unlawful
      purposes, particularly highly or gravely illegal purposes, the general welfare is
      not served.

75.   Pursuant to the Ninth Amendment and Article I, Section 8 and Article 6 of
      the U.S. Constitution, there is an implied right to not have one's taxes be
      collected for unlawful purposes, at a minimum not for egregious, gravely illegal
      purposes. Plaintiffs hold these inherent, inalienable, natural and fundamental
      rights.

76.   The Israel Security Supplemental Appropriations Act has unconstitutionally
      caused, and continues to cause, a violation of Plaintiffs' constitutional rights to
      have their taxes collected for only lawful purposes because the Act has
      appropriated and continues to appropriate Plaintiffs' taxes to be used for the
      highly and gravely unlawful purpose of complicity in genocide.

77.   Accordingly, Public Law 118-50 should be declared unconstitutional, and its
      enforcement should be enjoined.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against each defendant as follows:

1. That the Court declare, adjudge, and decree that the causes of action are proper class action causes of action and certify the proposed class and/or any appropriate subclasses under Rule 23 of the Federal Rules of Civil Procedure;

2. That the Court declare, adjudge, and decree that U.S. Congressional Defendants exceeded the constitutional limits on tax and spend authority when voting in favor of the Israel Security Supplemental Appropriations Act, and violated and continue to violate the Plaintiffs' constitutional rights to have their taxes collected for only lawful purposes;

3. That the Court declare, adjudge, and decree that U.S. Congressional Defendants violated their duty under customary international law, as part of federal common and statutory law, that prohibits complicity in genocide by voting in favor of the Israel Security Supplemental Appropriations Act knowing that the votes would result in the enabling and facilitating of Israel's commission of genocidal acts against the Palestinian people of Gaza;

4. That the Court declare, adjudge, and decree that U.S. Congressional Defendants, by voting in favor of the Israel Security Supplemental Appropriations Act, violated their duty under federal common and statutory law that prohibits aid to foreign security forces that have committed a gross violation of human rights, assistance to any country in which the government engages in a consistent pattern of gross violations of internationally recognized human rights, and U.S. weapons transfers that risk facilitating or otherwise contributing to violations of human rights or international law;

5. That the Court declare, adjudge, and decree that the Israel Security Supplemental Appropriations Act violates Plaintiffs' constitutional rights pursuant to the Ninth Amendment and Article I, Section 8 and Article 6 of the U.S. Constitution;

6. For all available injunctive, equitable, and other relief, including but not limited to an injunction enjoining Defendants AUSTIN, HEGSETH and any successor Secretary of the Department of Defense from enforcing or causing any other federal actor to enforce the Israel Security Supplemental Appropriations Act;

7. For compensatory damages, according to proof;

8. For such other and further relief as the Court deems proper and just.

DATED:  May 12, 2025

Signature of Plaintiff   Coleen Rowley

Plaintiff's Name   Coleen Rowley

Mailing Address   193 Beaumont Ct

Apple Valley, MN

55124

Telephone Number   952 393-0914

DATED:   17 April, 2025

Signature of Plaintiff   Bill Soren

Plaintiff's Name   Bill Sorem

Mailing Address   14301 Stount Lane #405

Minnetonka

Minnesota   55345

Telephone Number   952-239-1169

DATED:    4/16/2025

Signature of Plaintiff _____ *Fiona L. Roedl* _____

Plaintiff's Name       _____Fiona L. Roedl_____

Mailing Address        ____4520 – 33rd Ave S._____

                       ___ Minneapolis, MN. 55406_____

                       _____

Telephone Number    _____612-242-1999_____

DATED:    April 24, 2025

Signature of Plaintiff _Darlene M. Coffman_

Plaintiff's Name    _Darlene M. Coffman_

Mailing Address    _Darlene Coffman

_1019 Chalet Drive NW

_Rochester, MN 55901

Telephone Number    _507-513-1730

DATED: 4/33/25

Signature of Plaintiff _____

Plaintiff's Name _____ JANICE WARD

Mailing Address _____ 48063 Big Is, Rd

MARcell mn 56657

Telephone Number _____ 218-832-3946

DATED: 4 - 23 - 25

Signature of Plaintiff _David K. Evenhouse_

Plaintiff's Name _David K. Evenhouse_

Mailing Address _43053 N. Big Island Rd_

_Marcell MN 56657_

Telephone Number _213-322-3942_

DATED: 4/21/25

Signature of Plaintiff    _Amy Blumenshine_

Plaintiff's Name    _Amy Blumenshine_

Mailing Address    _3156 Elliot Avenue_

_Minneapolis, MN_

_55407_

Telephone Number    _(612) 822-6059_

DATED: 4/26/2025

Signature of Plaintiff _Michael Madden_

Plaintiff's Name _Michael J. Madden_

Mailing Address _1768 Iglehart Avenue_
_Saint Paul, MN_
_55104_

Telephone Number _651-644-2288_

DATED:   April 18, 2025

Signature of Plaintiff   Carol J. Walker

Plaintiff's Name   Carol J. Walker

Mailing Address   1311 Earl St.

St. Paul, MN 55106

Telephone Number   651-774-5795