UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Coleen Rowley, William "Bill" Sorem, Fiona Roedl, Darlene Coffman, Janice Ward, David Evenhouse, Amy Blumenshine, Mike Madden, Carol Walker, and John Doe,[1] | File No. 25-cv-2059 (ECT/LIB) |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| Brad Finstad, Angie Craig, Dean Phillips, Betty McCollum, Tom Emmer, Michelle Fischbach, Pete Stauber, Amy Klobuchar, Tina Smith, Lloyd J. Austin III, and Pete Hegseth, | |
| Defendants. | |

Coleen Rowley, *pro se*.

William "Bill" Sorem, *pro se*.

Fiona Roedl, *pro se*.

Darlene Coffman, *pro se*.

Janice Ward, *pro se*.

David Evenhouse, *pro se*.

Amy Blumenshine, *pro se*.

Mike Madden, *pro se*.

---

[1]   Plaintiffs initially brought this suit as a class action, but have since clarified that they do not seek class relief. ECF No. 31 ¶ 4; ECF No. 56 at 9. The caption's reference to representation "on behalf of themselves and all others similarly situated" is therefore omitted. *See* ECF No. 34 at 1.

Carol Walker, *pro se*.

John Doe, *pro se*.

Justin Merak Page, United States Attorney's Office, Minneapolis, MN, for Defendants Brad Finstad, Angie Craig, Dean Phillips, Betty McCollum, Tom Emmer, Michelle Fischbach, Pete Stauber, Amy Klobuchar, Tina Smith, Lloyd J. Austin III, and Pete Hegseth.

---

In April 2024, the United States Congress passed a bill providing military aid to Israel. Plaintiffs are Minnesota residents and federal taxpayers who object to the legislation because they believe the funds support genocide in Gaza. They sue members of Congress from Minnesota and the former and current Secretaries of Defense seeking a declaration that the challenged law violates the Constitution, international treaties, and other federal law. They also seek an order enjoining the law's enforcement. Defendants move to dismiss for lack of subject-matter jurisdiction and failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiffs have not plausibly alleged that they are directly injured by Defendants' conduct, they do not have standing to sue, and their complaint will be dismissed for lack of subject-matter jurisdiction.

I

Plaintiffs allege that on January 26, 2024, the International Court of Justice ("ICJ") "found that at least some of the acts and omissions committed by Israel in Gaza appear to be capable of falling within[] the provisions of the United Nations Convention on the Prevention and Punishment of the Crime of Genocide." Am. Compl. [ECF No. 34] ¶ 23. According to the Amended Complaint, the ICJ ordered Israel to ensure its military does not commit genocide and to take certain humanitarian measures, *id.*, and on January 31,

2

"found that it is plausible that Israel's conduct in Gaza amounts to genocide." *Id.* ¶ 24. Plaintiffs allege that, over the following months, Amnesty International and Human Rights Watch found that Israel was defying the ICJ ruling, determining "that the Israeli government was systematically starving the people of Gaza through cutting off aid, water, and electricity, by bombing and military occupation, all underwritten by the provision of U.S. military aid and weapons." *Id.* ¶ 25.

On April 20 and 23, 2024, the United States House of Representatives and Senate, respectively, voted to enact the Israel Security Supplemental Appropriations Act. *Id.* ¶ 27; *see* Pub. L. No. 118-50, 138 Stat. 895 (2024). The Act "allocated $26.38 billion in U.S. taxpayer dollars to the Department of Defense for use as military aid to Israel." Am. Compl. ¶ 27. Those funds included "$3.5 billion for the procurement of advanced weapons systems, defense articles, and defense services . . . ; $1 billion to enhance the production and development of artillery and critical munitions; and $4.4 billion to replenish defense articles and defense services provided to Israel." *Id.*

Defendants are members and a former member of the U.S. Congress from Minnesota—seven Representatives and two Senators—as well as the current Secretary of the Department of Defense and his predecessor. *Id.* ¶¶ 11–21. The nine Congressional Defendants voted in favor of the Act, even though they were on notice of the alleged findings that Israel was committing genocide. *Id.* ¶¶ 27–28. The two Defense Secretary Defendants were and are the "principal defense policy maker and advisor" over the relevant periods, Lloyd J. Austin, III, in April 2024, and Pete Hegseth from January 2025 up to the

3

present day. *Id.* ¶¶ 20–21. Former Secretary Austin and Secretary Hegseth have overseen the implementation of funding under the Act. *Id.*

Plaintiffs are ten Minnesota residents, represented in Congress by the Congressional Defendants.[2] Plaintiffs believe the Act violates a host of national and international laws: the Genocide Convention Implementation Act, *id.* ¶ 30 (citing 18 U.S.C. § 1091); the Leahy Law, *id.* ¶ 31 (first citing 10 U.S.C. § 362; and then citing 22 U.S.C. § 2378d); the Foreign Assistance Act of 1961, *id.* ¶ 34 (citing 22 U.S.C. § 2151 *et seq.*); the Conventional Arms Transfer policy, *id.* ¶ 35; Article VI of the U.S. Constitution, *id.* ¶ 36; the Convention on the Prevention and Punishment of Genocide, *id.* ¶ 37; customary international law, *id.* ¶¶ 36–37; and the Taxing and Spending Clause of the U.S. Constitution, *id.* ¶ 37. As Plaintiffs see it, enacting and implementing the Act caused Plaintiffs a moral and emotional injury. Am. Compl. ¶ 43. They allege their tax dollars have made them complicit in genocide, and they have suffered mental distress, including "bouts of uncontrollable weeping, inability to sleep, distractions from work, despair for the future of their children and humanity, inability to experience joy, feelings of guilt, social isolation, and anxiety." *Id.*

The Complaint raises two causes of action under the Constitution. Count I, brought against the Congressional Defendants, arises under the Taxing and Spending Clause and

---

[2]   Defendants Amy Klobuchar and Tina Smith are the Senators representing each Plaintiff. Am. Compl. ¶¶ 11–19. No Plaintiff lives in a Congressional District represented by Defendant Tom Emmer. *See id.* Defendant Dean Phillips is no longer a member of the House of Representatives, but he was a member in April 2024. Two Plaintiffs (Fiona Roedl and Amy Blumenshine) are residents of Hennepin County but do not allege who represents them in the House. *Id.* ¶¶ 12, 15.

the Ninth Amendment.  *Id.* ¶¶ 45–50; *see* U.S. Const. art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ."); U.S. Const. amend. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.").  Count III asserts a similar claim against the Defense Secretary Defendants, citing the previous constitutional provisions as well as Article VI of the Constitution and the Administrative Procedure Act. Am. Compl. ¶¶ 58–64; *see* U.S. Const. art. VI, § 1, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land . . . ."); 5 U.S.C. § 706(2) (authorizing judicial review of agency action). Plaintiffs also raised a *Bivens* claim, Am. Compl. ¶¶ 51–57 (Count II), but have since dropped it, ECF No. 56 at 10.  They seek a declaratory judgment that the Act violates the U.S. Constitution, customary international law, and federal common and statutory law, and they request an injunction preventing Secretary Hegseth and any successor Defense Secretary from enforcing the Act.  Am. Compl. at 31–33.

## II

A court reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) must first determine whether the movant is making a "facial" or "factual" attack.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* (citation modified).  In a factual attack, the movant

challenges the factual basis for jurisdiction and matters outside the pleadings are considered. *Id.* at 914–15. Defendants argue that they are making a factual attack, ECF No. 51 at 3, but they do not reference any matters outside the pleadings or challenge the truth of the Amended Complaint's allegations, so I understand the motion to facially attack subject-matter jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

In analyzing a facial challenge, a court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* Under those familiar standards, a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

III

Defendants argue that Plaintiffs lack standing to sue, and this jurisdictional issue must be the starting point. ECF No. 51 at 4–7. Here, it is also the ending point. Plaintiffs

6

lack standing to sue, so the Amended Complaint will be dismissed without prejudice, and Defendants' other arguments will not be addressed.

Article III of the Constitution limits the federal judicial power (or jurisdiction) to adjudicating "Cases" and "Controversies."  This provision keeps the federal courts out of the business of the legislative and executive branches, and the Supreme Court's standing jurisprudence guides the federal courts in determining whether a litigant seeks adjudication of a genuine "Case" or "Controversy" or instead hopes to have the court act as if it were one of the political branches.

"To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Steger v. Franco., Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  An injury-in-fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified).  In other words, the injury "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *Lujan*, 504 U.S. at 560 n.1).  When plaintiffs seek prospective relief, they must show that there is a sufficient likelihood of future injury.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiffs assert three theories of standing.  First, they have standing as taxpayers. ECF No. 56 at 11–12, 48–52.  Second, their mental distress caused by the Act amounts to a redressable injury-in-fact. *Id.* at 53–55.  Third, they are complicit in an ongoing genocide,

7

which causes them a moral injury. *Id.* at 55–57. None of these theories supports Article III standing, so there is no subject-matter jurisdiction.

Start with taxpayer standing. The Supreme Court has long held that, in general, mere federal taxpayer status is insufficient to confer standing. *See Frothingham v. Mellon*, 262 U.S. 447, 487–89 (1923) (decided with *Massachusetts v. Mellon*); *Doremus v. Bd. of Educ. of Hawthorne*, 342 U.S. 429, 433–35 (1952); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 476–82 (1982); *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 599–601 (2007) (plurality opinion); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011). As the Court explained in *Frothingham*, to "invoke[]" the judicial power a party must show "not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." 262 U.S. at 488. Simply paying federal taxes is "too generalized and attenuated" a harm "to support Article III standing." *Hein*, 551 U.S. at 599; *see Doremus*, 342 U.S. at 434 (finding that plaintiff's grievance was "not a direct dollars-and-cents injury").

The Supreme Court's decision in *Flast v. Cohen*, 392 U.S. 83 (1968), is a "narrow exception . . . to the general rule against taxpayer standing." *Bowen v. Kendrick*, 487 U.S. 589, 618 (1988). *Flast* held that taxpayers had standing where there was a "logical link between [taxpayer] status and the type of legislative enactment attacked," and a "nexus between that status and the precise nature of the constitutional infringement alleged." 392 U.S. at 102. There, the plaintiffs met both requirements when they alleged "the Federal

8

Government violated the Establishment Clause in the exercise of its legislative authority both to collect and spend tax dollars," satisfying the first nexus, and "that Government funds had been spent on an outlay for religion in contravention of the Establishment Clause," satisfying the second nexus. *Winn*, 563 U.S. at 139 (summarizing *Flast*). Outside "spending violations . . . invoking the Establishment Clause," the Supreme Court and the Eighth Circuit have never applied the *Flast* exception. *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 810 (8th Cir. 2022); *see Tarsney v. O'Keefe*, 225 F.3d 929, 936–38 (8th Cir. 2000) (declining to expand the exception). And the Supreme Court has "repeatedly emphasized that the *Flast* exception has a narrow application in our precedent, that only slightly lowered the bar on taxpayer standing, and that must be applied with rigor." *Hein*, 551 U.S. at 609 (citation modified).

This suit falls outside *Flast*'s narrow exception, so there is no taxpayer standing. Plaintiffs assert the Act exceeds limits on Congress's power to tax and spend, Am. Compl. ¶¶ 48, 61, but they do not bring an Establishment Clause claim. They press violations of what they say is an unenumerated Ninth Amendment right not to have taxes collected for "gravely illegal purposes," *id.* ¶¶ 49, 62, and Article VI's provision that the United States treaties are the supreme law of the land, *id.* ¶ 42. Neither the Supreme Court nor the Eighth Circuit have recognized an exception to the general prohibition on taxpayer standing in these contexts, and they firmly warn against expanding *Flast* beyond its facts. *See Hein*, 551 U.S. at 609; *Huizenga*, 44 F.4th at 810.

The other theories of standing are also unavailing. Plaintiffs "fail to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other

9

than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge Christian Coll.*, 454 U.S. at 485. That psychological harm does not amount to an Article III injury. *Id.*; *see All. for Hippocratic Med.*, 602 U.S. at 381 ("Article III standing screens out plaintiffs who have only a general legal, moral, ideological, or policy objection to a particular government action."). Plaintiffs argue the Supreme Court has not ruled that psychological harm is never an injury-in-fact, ECF No. 56 at 56–57, but the case law behind that claim is distinguishable. In *TransUnion LLC v. Ramirez*, the Court declined to consider whether the emotional or psychological harm stemming from the "risk of future physical, monetary, or reputational harm" could be an injury-in-fact. 594 U.S. 413, 436 & n.7 (2021). That kind of emotional harm, if actionable, depends on impending direct harm to the plaintiff, *id.*, and Plaintiffs have not advanced that theory. Plaintiffs also argue they suffer a moral injury because their tax dollars have made them complicit in genocide. ECF No. 56 at 57. This theory is essentially a form of taxpayer standing and is not a recognized exception to the general prohibition. *See Hein*, 551 U.S. at 599. As Plaintiffs frame the injury, their moral complicity is a harm shared by all American taxpayers (or at least those taxpayers who agree with Plaintiffs), so it is not concrete and particularized. *See Lujan*, 504 U.S. at 560; *All. for Hippocratic Med.*, 602 U.S. at 382 ("Article III does not contemplate a system where 330 million citizens can come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law.").

## ORDER

Therefore, based on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1.    Defendants' Motion to Dismiss [ECF No. 50] is **GRANTED**.

2.    Plaintiffs' Amended Complaint [ECF No. 34] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 10, 2026                      s/ Eric C. Tostrud
                                                          Eric C. Tostrud
                                                          United States District Court